```
IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
```

DAVID ERNEST MALINZAK,           )
                                 )
            Petitioner,          )
                                 )
       v.                        )       1:20CV320
                                 )
STATE OF NORTH CAROLINA,         )
                                 )
            Respondent.          )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Petitioner, a former prisoner of the State of North Carolina, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Docket Entry 1.)[1] Respondent has moved to dismiss the Petition on grounds of untimeliness (Docket Entry 6; see also Docket Entry 7 (Supporting Brief)), and Petitioner responded in opposition (Docket Entry 9). For the reasons that follow, the Court should grant Respondent's Motion to Dismiss and dismiss the Petition as untimely.

---

[1] The Offender Public Information section of the North Carolina Department of Public Safety, Division of Corrections's website reflects that Petitioner's prison sentences expired on October 8, 2020, but that he remains subject to post-release supervision until April 6, 2021. See https://webapps.doc.state.nc.us/opi (search for David Malinzak) (last visited Dec. 21, 2020). That post-filing development does not moot the Petition, as a Section 2254 petitioner need only remain "in custody" pursuant to the state conviction at the time of the filing of the petition, see Maleng v. Cook, 490 U.S. 488, 490 (1989) (citing Carafas v. LaVallee, 391 U.S. 234, 238 (1968)). Moreover, to satisfy that requirement, a petitioner need not remain in actual physical custody of state authorities, as well-settled law holds that an ongoing term of probation or parole constitutes a sufficient restraint on a petitioner's liberty to allow the petitioner to challenge a state sentence under Section 2254. See Jones v. Cunningham, 371 U.S. 236, 242 (1963) (deeming prisoner on parole still "in custody" for habeas purposes because release from physical confinement remained conditional and "the custody and control of the Parole Board involves significant restraints on petitioner's liberty").

## I. <u>Procedural History</u>

On July 23, 1997, in the Superior Court of Forsyth County, a jury found Petitioner guilty of second degree sexual offense and second degree rape in cases 96 CRS 36407 and 36408. (<u>See</u> Docket Entry 1, ¶¶ 1, 2, 4-6; <u>see also</u> Docket Entry 7-2 at 2-5.)[2] The trial court sentenced Petitioner to two consecutive terms of 132 to 168 months' imprisonment. (<u>See</u> Docket Entry 1, ¶ 3; <u>see also</u> Docket Entry 7-2 at 2-5.) Petitioner appealed (<u>see</u> Docket Entry 1, ¶ 8), and the North Carolina Court of Appeals found no error, <u>State v. Malinzak</u>, No. 98-34, 131 N.C. App. 702, 515 S.E.2d 758 (table) (Dec. 15, 1998) (unpublished). Thereafter, Petitioner neither submitted a petition for discretionary review to the North Carolina Supreme Court (<u>see</u> Docket Entry 1, ¶ 9(g)) nor a petition for certiorari to the United States Supreme Court (<u>see</u> Docket Entry 1, ¶ 9(h)).

On July 22, 2009, the trial court accepted as filed Petitioner's first <u>pro se</u> motion for appropriate relief ("MAR"), and denied that MAR on March 17, 2010. (<u>See</u> Docket Entry 1-1 at 3 (trial court order denying Petitioner's third MAR setting forth filing and denial dates of Petitioner's two prior MARs).) Subsequently, on September 9, 2015, the trial court file-stamped Petitioner's second <u>pro se</u> MAR, and denied that MAR on September

---

[2] Throughout this Memorandum Opinion, pin citations to page numbers refer to the page numbers that appear in the footer appended to documents upon their docketing in the Court's CM/ECF system.

25, 2015.  (See id. (trial court order denying Petitioner's third MAR setting forth filing and denial dates of Petitioner's two prior MARs).)  Petitioner thereafter submitted a third pro se MAR (see id. at 5-10; see also Docket Entry 1, ¶ 11(a)), as well as a Motion for Preparation of Stenographic Transcript (see Docket Entry 1-1 at 11-12), to the trial court, which he dated as signed on August 30, 2017 (see id. at 8-10, 12), and which that court accepted as filed on September 19, 2017 (see id. at 5), and September 12, 2017 (see id. at 11), respectively.  The trial court denied Petitioner's Motion for Preparation of Stenographic Transcript on September 18, 2017 (see id. at 13), and his third MAR by order dated January 24, 2018 (see id. at 3-4).  Petitioner sought review of his third MAR's denial in the North Carolina Supreme Court by filing a Petition for Writ of Certiorari (Docket Entry 7-4; see also Docket Entry 1, ¶ 11(b)), which he dated as signed on February 2, 2018 (see Docket Entry 7-4 at 4), and which that court accepted as filed on February 28, 2018 (see id. at 2).  The North Carolina Supreme Court denied the petition by order dated May 9, 2018.  (Docket Entry 7-5.)[3]

Petitioner then submitted the instant Petition to the United States District Court for the Eastern District of North Carolina on

---

[3] Petitioner alleges that, on an unidentified date, he filed a "Petition for Writ of Habeus [sic] Corpus" in "Guilford County to have [him] released instead of Oct[ober] 8th 2020 [r]elease [d]ate," as well as that, on November 12, 2019, the North Carolina Court of Appeals denied his Writ of Mandamus seeking to compel the Guilford County court to rule on the habeas petition.  (Docket Entry 1 at 13; see also id., ¶ 11(c).)  None of those documents appear in the record and, for the reasons outlined in the discussion that follows above, none affect the timeliness analysis.

3

March 26, 2020 (see Docket Entry 1 at 14), and the Eastern District transferred the case to this Court by order dated April 9, 2020 (see Docket Entry 3).[4]  Respondent thereafter moved to dismiss on grounds of untimeliness (Docket Entries 6, 7), and Petitioner responded in opposition (Docket Entry 9).  For the reasons that follow, the Court should grant Respondent's Motion to Dismiss, because Petitioner submitted his Petition outside of the one-year limitations period.

## II. Grounds for Relief

The Petition raises four grounds for relief:

1) "no Miranda rights read" (Docket Entry 1, ¶ 12(Ground One) (standard capitalization applied));

2) "alleged victim halusenated [sic] and or was cohearsed [sic] and or cohearsed [sic] someone (?)" (id., ¶ 12(Ground Two) (standard capitalization applied));

3) "indictments real or forgeries" (id., ¶ 12(Ground Three) (standard capitalization applied)); and

4) "no physical evidence to connect [Petitioner]" (id., ¶ 12(Ground Four)).

---

[4] Under Rule 3(d) of the Rules Governing Section 2254 Cases in United States District Courts, the Court deems Section 2254 petitions as filed on the date the petitioner signs the petition, under penalty of perjury, as submitted to prison authorities.

4

## III. Discussion

Respondent seeks dismissal of the Petition on the grounds that Petitioner filed it outside of the one-year limitations period of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), see 28 U.S.C. § 2244(d)(1). (See Docket Entry 7 at 3-13.) In order to assess Respondent's statute of limitations argument, the Court must first determine when Petitioner's one-year period to file his Petition commenced. The United States Court of Appeals for the Fourth Circuit has explained:

> Under § 2244(d)(1)(A)-(D), the one-year limitation period begins to run from the latest of several potential starting dates:
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> >
> > (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> >
> > (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

5

Green v. Johnson, 515 F.3d 290, 303-04 (4th Cir. 2008). The Court must determine timeliness on claim-by-claim basis. See Pace v. DiGuglielmo, 544 U.S. 408, 416 n.6 (2005).

Respondent correctly contends that the Petition qualifies as untimely under subparagraph (A). (Docket Entry 7 at 3-5.)[5] Under that subparagraph, Petitioner's conviction became final on January 19, 1999 — the final day on which he could have filed a notice of appeal or a petition for discretionary review in the North Carolina Supreme Court, regarding the decision of the North Carolina Court

---

[5] Neither Petitioner nor Respondent argue that subparagraphs (B), (C), or (D) apply in this situation. (See Docket Entries 1, 7, 9.) Moreover, the plain language of subparagraphs (B) and (C) confirms that they have no possible application, as Petitioner's Grounds for Relief do not assert a state-created "impediment to filing" the instant Petition, 28 U.S.C. § 2244(d)(1)(B), or invoke a new "constitutional right" recognized by the United States Supreme Court and "made retroactively applicable to cases on collateral review," 28 U.S.C. § 2244(d)(1)(C). Furthermore, subparagraph (D) could not apply to Grounds One, Three, and Four, because Petitioner knew, or through exercise of due diligence should have known, of their factual predicates since the time of his conviction on July 23, 1997. (See Docket Entry 1, ¶ 12(Ground One), (Ground Three), (Ground Four).) To the extent Petitioner bases Ground Two on his allegation that the victim hallucinated and/or was coerced and/or coerced someone (see Docket Entry 1, ¶ 12(Ground Two)), Petitioner still has not shown that subparagraph (D) applies. "[P]etitioner bears the burden of proving that he exercised due diligence, in order for the statute of limitations to begin running from the date he discovered the factual predicate of his claim . . . ." DiCenzi v. Rose, 452 F.3d 465, 471 (6th Cir. 2006). In his filings, Petitioner does not state when he supposedly first learned that the victim hallucinated and/or was coerced and/or coerced someone. (See Docket Entries 1, 9.) Absent such allegations, Petitioner has not demonstrated the necessary "due diligence" for application of subparagraph (D). See Freeman v. Zavaras, 467 F. App'x 770, 775 (10th Cir. 2012) (refusing to apply subparagraph (D) where petitioner failed to explain why he could not have discovered factual predicate of claim earlier); Farabee v. Clarke, No. 2:12CV76, 2013 WL 1098098, at *3 (E.D. Va. Feb. 19, 2013) (unpublished) (finding subparagraph (D) inapplicable where the petitioner's "threadbare" allegations failed to explain inability to discover predicate earlier), recommendation adopted, 2013 WL 1098093 (E.D. Va. Mar. 13, 2013) (unpublished); Norrid v. Quarterman, No. 4:06CV403, 2006 WL 2970439, at *1 (N.D. Tex. Oct.16, 2006) (unpublished) (concluding that the petitioner bore burden of demonstrating applicability of subparagraph (D)); Frazier v. Rogerson, 248 F. Supp. 2d 825, 834 (N.D. Iowa 2003) (refusing to apply subparagraph (D) when the petitioner "never identifie[d] when or how he discovered his 'new evidence'"). Accordingly, subparagraph (D) does not apply.

of Appeals on December 15, 1998.  See N.C. R. App. P. 14(a) (requiring notice of appeal within 15 days after Court of Appeals issues mandate), 15(b) (requiring filing of petition for discretionary review within 15 days after Court of Appeals issues mandate), 32(b) (stating that mandate shall issue 20 days after filing of opinion unless court orders otherwise); see also Gonzalez v. Thaler, 565 U.S. 134, 149–50 (2012) (holding that a petitioner's case becomes final when time for pursuing direct review expires); Saquilar v. Harkleroad, 348 F. Supp. 2d 595 (M.D.N.C. 2004) (holding that the petitioner's conviction finalized 35 days after Court of Appeals issued opinion where the petitioner did not file petition for discretionary review), appeal dismissed, 145 F. App'x 444 (4th Cir. 2005).

Petitioner's one-year period under AEDPA then ran, unimpeded, from January 19, 1999, until it expired one year later on Wednesday, January 19, 2000.  Because Petitioner did not file the instant Petition until March 26, 2020, that filing remains more than 20 years out of time.  Moreover, because (as detailed above) Petitioner submitted all of his post-conviction filings well after AEDPA's one-year statute of limitations had already run, none of those belated filings could toll the limitations period, see Minter v. Beck, 230 F.3d 663, 665 (4th Cir. 2000) (finding that state filings made after expiration of federal limitations period do not restart or revive that period).

7

Nonetheless, the Court may equitably toll the one-year limitation period, see Holland v. Florida, 560 U.S. 631, 634 (2010), if Petitioner demonstrates that (1) he has diligently pursued his rights, and (2) extraordinary circumstances prevented a timely filing, see id. at 649. Equitable tolling requires a case by case analysis. Id. at 649–50. Although Petitioner's pro se filings in this matter lack coherence, after liberally construing those filings as required by Haines v. Kerner, 404 U.S. 519 (1972), the Court may discern various arguments for excusing the Petition's untimeliness. (See Docket Entry 1, ¶ 18; see also Docket Entry 9.) As discussed in further detail below, none of those arguments can salvage the Petition.

First, Petitioner's filings contain numerous (but unexplained) references to the "Cohen doctrine." (Docket Entry 1 at 14 ("I used Cohen Doctrine as soon as I was able."); see also Docket Entry 9 at 1-3.) Petitioner may have intended to invoke the United States Supreme Court's decision in Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541 (1949), wherein the Supreme Court recognized the "collateral order" exception to the requirement that all appeals under 28 U.S.C. § 1291 must await final judgment on the merits in the underlying litigation. Cohen, 337 U.S. at 546. Specifically, the Supreme Court permitted interlocutory appeals for "claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate

8

consideration be deferred until the whole case is adjudicated." Id. If Petitioner means to argue that, via the Cohen doctrine, he has the right to "appeal" the unadjudicated habeas corpus petition he allegedly filed in the Guilford County court, that argument falls short. Petitioner's instant Petition under Section 2254 does not constitute a direct appeal of the Guilford County habeas corpus petition but rather a collateral attack on his underlying convictions and/or sentences subject to AEDPA's timeliness rules. Accordingly, the Cohen doctrine does not alter the untimeliness of the instant Petition.

Second, in the paragraph of the Petition that directs Petitioner to "explain why the one-year statute of limitations as contained in [AEDPA] does not bar [his P]etition," Petitioner states that, with regards to the "four grounds here in this Petition[,] state law unknown to [Petitioner], filing hisself [sic] since direct appeal 1998." (Docket Entry 1, ¶ 18 (standard capitalization applied).) To the extent Petitioner argues that his lack of legal fluency and/or counsel should toll the statute of limitations, the Court should deny relief because, "even in the case of an unrepresented prisoner, ignorance of the law is not a basis for equitable tolling," United States v. Sosa, 364 F.3d 507, 512 (4th Cir. 2004).

Third, Petitioner included the words "not mentally incompetent" in his response in opposition to Respondent's instant Motion. (Docket Entry 9 at 3.) Assuming that Petitioner therein

9

asserts that his <u>own</u> mental incompetence should excuse his late filing, that contention fails, as the United States Court of Appeals for the Fourth Circuit has made clear that "equitable tolling because of a petitioner's mental condition" applies "only in cases of profound mental incapacity." <u>Sosa</u>, 364 F.3d at 512. Notably, in so holding, the Fourth Circuit cited a Ninth Circuit decision that limited "equitable tolling based on mental condition" to "exceptional circumstances, such as institutionalization or <u>adjudged</u> mental incompetence." <u>Id.</u> (emphasis added) (citing <u>Grant v. McDonnell Douglas Corp.</u>, 163 F.3d 1136, 1138 (9th Cir. 1998)). Petitioner has made no showing that his alleged "mental incompetence" resulted in institutionalization or <u>adjudged</u> incompetence at any time, let alone during the limitations period. <u>See</u> <u>Allen v. Bell</u>, 250 F. App'x 713, 716 (6th Cir. 2007) (denying inmate who alleged low IQ equitable tolling because he failed to "ma[ke] any factual showing of mental incapacity"); <u>Diamond v. Clarke</u>, No. 7:18CV580, 2019 WL 4546918, at *3 (W.D. Va. Sept. 19, 2019) (unpublished) (same). Moreover, Petitioner has failed to allege any facts showing how his alleged "mental incompetence" actually prevented him from timely filing the instant Petition. <u>See</u> <u>House v. Clarke</u>, No. 3:16CV238, 2017 WL 990580, at *4 (E.D. Va. Mar. 14, 2017) (unpublished) (finding equitable tolling inapplicable where the petitioner did not show how his mental condition prevented him from timely filing).

10

Fourth, Petitioner notes that North Carolina Prisoner Legal Services ("NCPLS") has declined to assist him with his post-conviction filings. (Docket Entry 9 at 1 ("[N]o help from [NCPLS]."); see also id. at 3 ("[NCPLS] declines every request.").) However, this Court has long held that a lack of assistance from NCPLS does not constitute grounds for equitable tolling. See Alenjandro Silva v. Perry, No. 1:15CV167, 2015 WL 10891651, at *2 (M.D.N.C. May 7, 2015) (unpublished) (Eagles, J.) (finding that conclusory allegations regarding denial of legal assistance by NCPLS did not warrant equitable tolling), appeal dismissed, 622 F. App'x 234 (4th Cir. 2015).

Fifth, in his response in opposition to Respondent's instant Motion, Petitioner states the following: "actually innocence [sic], innocent [Petitioner] is and should not be punished period." (Docket Entry 9 at 4 (standard capitalization applied.) Giving Petitioner the benefit of liberal construction, that language could constitute an argument that actual innocence excuses the untimeliness of the Petition, see McQuiggin v. Perkins, 569 U.S. 383 (2013). However, "[t]o be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." Schlup v. Delo, 513 U.S. 298, 324 (1995). Furthermore, showings of actual innocence "are rare," and a petitioner must demonstrate that no reasonable

11

juror could vote to find the petitioner guilty beyond a reasonable doubt. McQuiggin, 569 U.S. at 392-98. In this case, Petitioner's attempt to argue actual innocence as grounds to excuse the time bar falls far short, as he has not proffered any new evidence regarding his case, let alone evidence that would demonstrate that no reasonable juror could vote to find Petitioner guilty beyond a reasonable doubt. (See Docket Entries 1, 9.)

In sum, Petitioner cannot avoid the statute of limitations in this case.

### IV. Conclusion

The statute of limitations bars the instant Petition.

**IT IS THEREFORE RECOMMENDED** that Respondent's Motion to Dismiss (Docket Entry 6) be granted, that the Petition (Docket Entry 1) be dismissed, and that a judgment be entered dismissing this action, without issuance of a certificate of appealability.

                                              /s/ L. Patrick Auld
                                               **L. Patrick Auld**
                                  **United States Magistrate Judge**

December 30, 2020